UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                          :
MERRICK BANK CORPORATION,                 :    Civil Action No. 12 CV 7315 (RJS)
                                          :
                    Plaintiff,            :
                                          :
                                          :
     - vs -                               :
                                          :    **JOINT PROPOSED PRETRIAL**
CHARTIS SPECIALTY INSURANCE               :    **ORDER**
COMPANY,                                  :
                                          :
                    Defendant.            :
_____ :

        The parties jointly submit this Joint Proposed Pretrial Order in accordance with this

Court's direction in its Opinion on Summary Judgment and its Order entered September 15,

2016 following the August 23, 2016 Pre-Trial Conference.

## I.  THE CAPTION

See above.

## II.  CONTACT INFORMATION FOR TRIAL COUNSEL

        a.  Daniel G. Gurfein
            Andrew Fish
            James Regan
            Michael Cabin
            Satterlee Stephens Burke & Burke LLP
            230 Park Avenue, 11th Floor
            New York, NY 10169
            (212) 818-9200
            Attorneys for Plaintiff Merrick Bank Corporation

        b.  Robert Novack
            Charles W. Stotter
            Nicholas I. Bamman
            Bressler, Amery & Ross, P.C.
            17 State Street, 34th Floor
            New York, NY 10006

(212) 425-9300
Attorneys for Defendant Chartis Specialty Insurance Company

## III.   JURISDICTION

### a.   Brief Statement by Plaintiff

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Merrick Bank Corporation is a Utah Corporation, with its principal place of business in South Jordan, Utah, and Chartis Specialty Insurance Company is an Illinois corporation with its principal place of business in New York.

### b.   Brief Statement by Defendant

Diversity jurisdiction exists in this case under 28 U.S.C. § 1332(a) because the parties are diverse (Merrick Bank Corporation is a Utah corporation with its principal place of business in Utah and Chartis Specialty Insurance Company (n/k/a AIG Specialty Insurance Company) is an Illinois corporation with its principal place of business in New York), and the amount in controversy exceeds $75,000.

## IV.   BRIEF STATEMENT OF THE CASE

### a.   Plaintiff

Plaintiff Merrick Bank contends that it is entitled to coverage for a claim it submitted under its insurance policy issued by defendant Chartis.  Merrick's claims are brought under New York law.

Merrick served as an acquiring bank for the merchant Direct Air.  When Direct Air ceased operations and declared bankruptcy, Merrick was responsible for paying the "chargebacks" to Direct Air customers. Merrick paid over $26 million in chargebacks to Direct Air customers that it was not able to collect from the merchant Direct Air.

Merrick purchased an uncollectible chargeback insurance policy from defendant Chartis to protect itself against uncollectible chargebacks (the "Chartis Policy).  Merrick made a claim under the Chartis Policy for the Direct Air uncollectible chargeback losses. Chartis has refused to cover Merrick's claim.  After recovery from other sources, Merrick currently seeks $18,069,578.70 from Chartis for Direct Air uncollectible chargebacks, plus attorneys' fees, costs and pre-judgment interest.

The central dispute at issue concerns the meaning of certain language on one of the endorsements on the Chartis Policy that relates specifically to Direct Air.  The endorsement refers specifically to "DOT Regulations."  The charter airline industry in which Direct Air operated is heavily regulated by the Department of Transportation, such that many DOT

regulations applied to Direct Air. One such regulation requires charter flight operators to deposit all funds they receive from customers in an escrow account maintained at a DOT-approved bank. Merrick deposited all funds from Direct Air credit and debit card transactions into the DOT escrow account at Valley National Bank.  When Direct Air went bankrupt, there was a significant "shortfall" in the escrow account.  Merrick claims the Chartis Policy covers Merrick for this shortfall.

Merrick claims that Chartis is in breach of contract for its refusal to cover the Direct Air uncollectible chargeback losses incurred by Merrick, and further claims that Chartis has taken an unreasonable coverage position in bad faith, entitling Merrick to additional damages in form of attorney's fees and costs incurred by Merrick.

   b.   Defendant

Merrick serves as an "acquiring bank" and clears credit card transactions within the payment networks of Visa, MasterCard, and Discover (the "Associations").  Merrick contracts with independent sales organizations ("ISOs"), which in turn market Merrick's transaction-clearing services to merchants and facilitate three-party agreements between Merrick, the merchant, and the ISO, for the purpose of allowing the merchant to accept credit and debit cards from the Associations in exchange for goods or services.

If a customer disputes a credit card or debit card charge – for example, because the paid-for goods or services were not delivered – the issuing bank will initiate a "chargeback," which requires Merrick to immediately refund the issuing bank, which in turn refunds the customer. Merrick is left with an "uncollectible chargeback" if it is unable to collect the chargeback amount from the merchant.   The ISO, however, provides Merrick with contractual indemnification for uncollectible chargebacks.   Merrick holds what is known as an "ISO Reserve" to collateralize obligations the ISO may owe it.

Merrick purchased from Chartis an Uncollectible Chargeback Insurance Policy (the "Policy") whereby Chartis will pay the potential shortfall created by uncollectible chargebacks subject to the Policy's terms and conditions – terms and conditions that have not been met here.

Direct Air, a charter operator that utilized the ISO JetPay, is one of the merchants for which Merrick cleared and settled credit and debit transactions.  Direct Air went out of business in 2012 and could not cover its customers' chargebacks.  Merrick paid $26.2 million of uncollectible chargebacks.  JetPay was unable to indemnify Merrick for the entire amount, but it immediately reimbursed Merrick $1.2 million, which brought Merrick's total liability down to $25 million – the exact amount of Merrick's policy with Chartis.  Merrick then brought this action against Chartis for $25 million.

Merrick is not entitled to coverage under the Policy.

   1.   Chartis's Obligation is Excess and Does Not Attach.

Merrick's coverage is <u>excess</u> to a Scheduled Reserve for Direct Air in Endorsement 4 in the Policy.  The U.S. Department of Transportation ("DOT") regulations required Direct Air to maintain an escrow account of all advance fares to handle any chargebacks -- the reserve.  Direct Air utilized Valley National Bank ("VNB") to manage its escrow, but failed to maintain the requisite funds in the escrow account, in violation of the DOT regulations.  Chartis's obligation is excess to the amount that should have been on deposit in the VNB escrow account.

The Court previously found that "Merrick paid uncollectible chargebacks in the amount of $26,171,409.23" and "[h]ad Direct Air complied with its obligations under the DOT regulations, the VNB Escrow would have had enough money on deposit to cover the uncollectible chargebacks paid out by Merrick in their entirety."  Memorandum and Order on cross-motions for summary judgment, dated March 20, 2015 [ECF doc no. 64] ("SJ Order") at 4.

The full $25 million that Merrick initially claimed as loss should have been on deposit as a Scheduled Reserve in the VNB Escrow and, as a result, Chartis' coverage does not attach.

2.   Merrick's Claimed Loss Must Be Reduced By the $16,234,423 It Has Already Recovered.

Merrick's claimed loss must be reduced by its indemnity recoveries from third parties and by the Policy's $250,000 deductible.  The Court previously held that Chartis's coverage is excess to any indemnity paid to Merrick by third parties that cleared the Direct Air customer credit card payments, including JetPay.  SJ Order at 17 ("Chartis's liability under the Policy – if any – is only in excess of that amount recoverable by Merrick pursuant to its indemnity rights against third parties.")

On or around July 26, 2016, Merrick entered into a settlement with JetPay (the "JetPay Settlement") that settled Merrick's indemnification claim against JetPay and two consolidated cases.  Merrick received **$13,239,952**.  Exhibit E to the JetPay Settlement purports to "allocate" **$7,256,594** of the settlement proceeds to legal fees Merrick has incurred in six litigations around the country.  Only **$5,983,358** was allocated to the Direct Air chargebacks.  The entire **$13,239,952** settlement of Merrick's indemnification claim against JetPay must be deducted from Merrick's claimed loss against Chartis pursuant to this Court's holding that Chartis's coverage obligation "is only in excess of that amount recoverable by Merrick pursuant to its indemnity rights against third parties."  SJ Order at 17.  No matter how Merrick characterizes its settlement with JetPay, there is no dispute that the **$13,239,952** constitutes  indemnity recovered against a third party. Therefore, coverage is excess to the full amount of the JetPay Settlement recovery.

Following Direct Air's bankruptcy, Merrick withdrew other funds from the ISO Reserve with JetPay that would otherwise have been available to partially satisfy Merrick's claimed loss and further reduce Chartis's potential exposure.  Other third party recoveries reducing Merrick's claimed losses include the VNB Escrow $669,886.06, Merrick's legal fees deducted by Merrick from JetPay ISO Reserve in the amount of $1,074,585.67, a $1 million Forbearance Agreement payment made by Merrick to JetPay from its ISO reserve account and the $250,000 Policy deductible.

In total, coverage, if any, is excess to $16,234,423 in indemnity recovered and the Policy deductible for a total alleged Loss of $8,765,577 ($25 million - $16,234,423).

## V.    TRIAL BY JURY

This matter will be tried by jury.  The parties estimate that approximately 5 days will be needed for trial.

## VI.    MAGISTRATE

The parties do not consent to a trial by Magistrate Judge.

## VII.    STIPULATED FACTS

1. "Merrick Bank Corporation serves as an 'acquiring bank' [for merchants] and clears credit card transactions [for merchants] within the payment networks of Visa, MasterCard, and Discover (the 'Associations')."  (Memorandum and Order dated March 20, 2015 [ECF No. 64] at 1 ["SJ Opinion at 1"]).

2. "When a customer makes a payment with a credit or debit card to a merchant for which Merrick clears transactions, the bank that issued the credit card to the customer – the 'issuing bank' – pays Merrick, the acquiring bank, through the applicable Association … and the issuing bank charges the customer on his or her monthly statement."  (SJ Opinion at 2).

3. "Thus, in a normal, successful credit card transaction with a merchant covered by Merrick, the issuing bank pays Merrick, Merrick pays the merchant, the merchant delivers goods or services to the customer, and the customer pays the issuing bank by paying down the balance on his or her monthly statement."  (SJ Opinion at 2).

4. "However, if the customer disputes the charge – for example, because the paid-for goods or services were not delivered – the issuing bank will initiate what is known as a 'chargeback,' which requires Merrick, as the acquiring bank, to immediately refund the issuing bank, which in turn refunds the customer."  (SJ Opinion at 2).

5. "In such a chargeback situation, Merrick must then look to the merchant that failed to deliver the goods or services in order to be refunded, and the process of the original transaction essentially reverses itself."  (SJ Opinion at 2).

6. "However, if Merrick is unable to collect from the merchant after a chargeback has been initiated and it has refunded the issuing bank – for example, if the merchant has, since accepting payment from Merrick, become insolvent or gone out of business – Merrick is left liable with what is known as an 'uncollectible chargeback.'"  (SJ Opinion at 2).

7. "Since 2001, Merrick has procured [uncollectible chargeback insurance] policies from, St. Paul Insurance Company, General Fidelity Insurance Company ('GFIC'), Westchester Surplus Lines Insurance Company ('ACE'), and [finally] Chartis [Specialty Insurance Company ('Chartis')]" in 2011.  (SJ Opinion at 2).

8. From August 1, 2006 to May 31, 2008, Merrick's uncollectible chargeback insurance was underwritten by General Fidelity Insurance Corporation, which will be referred to as the GFIC Policy.

9. From June 1, 2008 through June 30, 2011, Merrick's uncollectible chargeback insurance was underwritten by Westchester Surplus Lines Insurance Company, also known as "ACE," which policy will be referred to as the ACE Policy.

10. Gregory Richmond ("Richmond") of Royal Group Services, Inc. ("RGS") was a licensed insurance broker that placed the GFIC Policy, the ACE Policy and the Chartis Policy.

11. "One of the merchants for which Merrick cleared and settled credit and debit card transactions beginning in 2007 … was a charter flight operator called Southern Sky Air and Tours, LLC, doing business as Myrtle Beach Direct Air ('Direct Air')."  (SJ Opinion at 4).

12. "The charter airline industry in which Direct Air operated is heavily regulated by the Department of Transportation (the 'DOT'), such that many DOT regulations applied to Direct Air."  (SJ Opinion at 4).

13. Merrick Bank was not a DOT approved escrow bank.

14. Direct Air was included as a merchant covered under the GFIC Policy.  (Merrick's Resp. to Def.'s Rule 56.1 Statement ¶ 53).

15. The GFIC Policy had an Endorsement #1 listing, in a column labeled "Minimum Reserve," reserves for certain merchants, with the listing for Direct Air in that column stating the words "6 mo./10% rolling res.", which described a holdback of 10% of the merchant's volume of sales transactions for the previous six months that would be calculated as a merchant reserve, and that could fluctuate based on the volume of business of the merchant.  (*Id.*, ¶¶ 54-57).

16. The endorsement to the GFIC Policy was subsequently changed as to Direct Air and the entry for Direct Air in the "Minimum Reserve" column was changed to the words "DOT Regulation – 100% on deposit with DOT."  (*Id.*, ¶ 58).

17. The GFIC Policy was renewed for the period from 2007-2008 with the scheduled reserve listed for Direct Air remaining listed in the policy endorsement as "DOT Regulation – 100% on deposit with DOT."  (*Id.*, ¶ 62).

18. "The ACE Policy contained an endorsement listing reserves for certain merchants, and the reserve for Direct Air was listed as "DOT Regulation – 100% of all transactions are on deposit with DOT until service is completed…" (*Id.*, ¶ 64).

19. Chartis issued Uncollectible Chargeback Insurance Policy No. 7078195 to Merrick Bank Corporation ("Merrick"), with effective coverage from July 1, 2011 to July 1, 2012 (the "Policy"). (Merrick Response to Def.'s Rule 56.1 Statement ¶ 16).

20. The Insuring Agreement of the Policy provides that Chartis "shall pay the **insured** for **loss**, in excess of any applicable deductible, discovered by the **insured**, and reported to **us**, during the **policy period** or **discovery period**, resulting from **uncollectible chargebacks** occurring during the **policy period**." (*Id.*, ¶ 18; Policy, Section 1, Insuring Agreement).

21. The Policy states that a "**Chargeback** means the amount the **insured** is legally obligated to pay to a cardholder's **bank card** account, at the request of the cardholder and after a reasonable investigation by the **insured** … determines that (1) no goods or services were received by the cardholder from a **merchant** in connection with such amount …" (*Id.*, ¶ 19; Policy, Section 2, Definitions, ¶ d).

22. The Policy states that "**Uncollectible chargeback** means a **chargeback** the **insured** is legally or contractually obligated to pay and for which the **insured** has tried to collect and has been unable to collect from a **merchant**." (*Id.*, ¶ 20; Policy, Section 2, Definitions, ¶ r).

23. The Policy states that "**Loss** means the amount of **uncollectible chargeback** resulting directly from a **covered transaction** in excess of the balance in any applicable **merchant reserve account** regardless of whether such account (i) is in the custody or possession of an **insured**, or (ii) may be legally drawn down by any **insured**." (*Id.*, ¶ 21; Policy, Section 2, Definitions, ¶ i).

24. The Policy states that a ""**Merchant Reserve Account** means a cash account on deposit, letters of credit or other source of collateral held by an **insured** for a **merchant**. …" (Id., ¶ 21; Policy, Section 2, Definitions, ¶ m.)

25. Coverage under the Chartis Policy "extends to any single loss that exceeds the sum of:

> 1. the greater of (i) the balance in the **merchant reserve account** for such **merchant** as of the discovery of the first **uncollectible chargeback** for such **merchant**, and (ii) the amount indicated as the balance in the **merchant reserve account** for such **merchant** in an endorsement to this policy; and
> 2. the **single loss** deductible amount set forth in Item 4 of the Declarations."

> (SJ Opinion at 3).

26. "Thus, the amount of coverage under the Policy where Merrick suffers an uncollectible chargeback is limited to the amount by which the uncollectible chargeback exceeds the sum of (1) the deductible applicable to that merchant, and (2) the greater of (i) the merchant reserve account for that merchant, and (ii) the amount 'indicated as the balance' for the applicable merchant reserve account in 'an endorsement' to the Policy." (SJ Opinion at 3).

27. "One of the endorsements to the Policy, Endorsement 4, is a chart with a non-exhaustive list of merchants covered by the Policy and the deductible associated with each merchant, and includes a column for 'scheduled reserve.'" (SJ Opinion at 3).

28. "Most of the notations in the 'scheduled reserve' column of Endorsement 4 are numbers – apparently dollar amounts – but some are words or phrases like 'Included,' '14 day rolling,' or, relevant to the instant dispute, 'DOT Regulations.'" (SJ Opinion at 3).

29. "Direct Air is listed in the Policy's Endorsement 4 with the notation 'DOT Regulations' in the 'scheduled reserve' column." (SJ Opinion at 4).

30. "In March 2012, Direct Air filed for Chapter 11 bankruptcy, which was subsequently converted to Chapter 7 liquidation." (SJ Opinion at 4).

31. "As a result of the bankruptcy and liquidation, thousands of customers who had paid money to Direct Air by credit or debit card in advance of flights sought refunds, and Merrick paid uncollectible chargebacks in the amount of $26,171,409.23." (SJ Opinion at 4).

32. After Direct Air's bankruptcy, there was found to be insufficient funds in the Valley National Bank escrow account to reimburse passengers for flights they had paid for but did not take due to Direct Air's bankruptcy.

33. Subsequently, Merrick recovered the amount of $669,886.06 from the VNB Escrow through the Direct Air bankruptcy.  (Merrick's Resp. to Def.'s Rule 56.1 Statement ¶ 81; Def.'s Statement of Facts on Summary Judgment ¶ 134).

34. Merrick submitted a notice of claim to Chartis pertaining to Direct Air in March 2012.

## VIII.    WITNESSES

### a.  Plaintiff

| Names | Live or Deposition | Expect to Call/May Call if Need Arises |
|-------|-------------------|----------------------------------------|
| Watson, David | Live | Expects to Call |
| Horn, Fred | Live | Expects to Call |
| Fox, Richard | Live | May Call |
| Johnston, Tiffiney | Live | Expects to Call |
| Evans, Matthew | Live | May Call |
| Perro, Robert | Live | May Call |
| Jones, Brian | Live | May Call |
| Hayden, Brian | Live | May Call |
| Kenney, Lisa | Live | May Call |
| Stivali, Tom | Live | Expects to Call |
| Camillo, Mark | Live | Expects to Call |
| Blake, Judith | Live | Expects to Call |
| Orlowicz, Charles | Live | Expects to Call |
| Richmond, Gregory | Deposition | Expects to Call |

### b.  Defendant

CSIC intends to call the following witnesses:

1. Gregory Richmond (testimony by deposition)
2. Tom Stivali (live testimony)
3. Mark Camillo (live testimony)
4. Judith Blake (live testimony)

5. Charles Orlowicz (live testimony)
6. Fred Horn (live testimony)
7. Trent Voigt (testimony by deposition)
8. Richard Fox (live testimony)
9. Robert Perro (live testimony)

## IX.  DEPOSITION DESIGNATIONS

a.  Plaintiff's Deposition Designations

| PLAINTIFF DESIGNATION | OBJECTION/COUNTER-DESIGNATION |
|---|---|
| **GREGORY RICHMOND** | |
| Pg: 10 Ln: 5-12 | None |
| Pg: 12 Ln: 14-19 | None |
| Pg: 13 Ln: 24 - Pg: 14 Ln: 14 | None |
| Pg: 15 Ln: 3-6 | None |
| Pg: 18 Ln: 15 - pg: 19 Ln: 8 | None |
| Pg: 19 Ln: 21 - Pg: 20 Ln: 21 | None |
| Pg: 26 Ln: 25 - Pg: 28 Ln: 6 | None - Add 123:10 – 125:6 |
| Pg: 28 Ln: 7-17 | None |
| Pg: 31 Ln: 17 - Pg: 32 Ln: 21 | None |
| Pg: 33 Ln: 10-23 | None |
| Pg: 38 Ln: 4 - Pg: 39 Ln: 4 | None |
| Pg: 46 Ln: 19 - Pg: 47 Ln: 6 | Relevance - law of the case regarding Richmond/RGS acting as Merrick's broker |
| Pg: 56 Ln: 8-12 | None |
| Pg: 58 Ln: 19 - Pg: 59 Ln: 7 | None |
| Pg: 59 Ln: 23 - Pg: 60 Ln: 16 | None |
| Pg: 65 Ln: 5 - Pg: 66 Ln: 14 | Relevance – calc. of premium |
| Pg: 70 Ln: 16 - Pg: 72 Ln: 9 | None  (should be line 18 not 16) |
| Pg: 77 Ln: 3-12 | None |
| Pg: 77 Ln: 13 - Pg: 78 Ln: 5 | None |
| Pg: 89 Ln: 14-25 | None |
| Pg: 90 Ln: 20 - Pg: 92 Ln: 1 | None - add 90:1-19 |
| Pg: 92 Ln: 2-9 | None |
| Pg: 92 Ln: 10-21 | None |
| Pg: 93 Ln: 18 - Pg: 97 Ln: 16 | None |
| Pg: 100 Ln: 3-13 | None |
| Pg: 103 Ln: 4-23 | None - Add 103:24-25 |
| Pg: 104 Ln: 11-15 | None - Add 104:1-10 |
| Pg: 112 Ln: 10 - Pg: 114 Ln: 13 | Relevance - law of the case regarding Richmond/RGS acting as Merrick's broker |
| Pg: 119 Ln: 25 - Pg: 122 Ln: 14 | Relevance - law of the case regarding |

| | |
|---|---|
| | Richmond/RGS acting as Merrick's broker |
| Pg: 126 Ln: 23 - Pg: 127 Ln: 5 | Relevance – calc. of premium not relevant to coverage<br>Relevance - law of the case regarding Richmond/RGS acting as Merrick's broker |
| Pg: 132 Ln: 9 - Pg: 133 Ln: 25 | None |
| Pg: 134 Ln: 1 - Pg: 135 Ln: 14 | None |
| Pg: 137 Ln: 13-15 | None |
| Pg: 137 Ln: 24 - Pg: 138 Ln: 12 | None |
| Pg: 139 Ln: 3-19 | None |
| Pg: 139 Ln: 20-24 | None |
| Pg: 142 Ln: 3-7 | None |

b.  Defendant's Deposition Designations

| Witness | Defendant's Deposition Designation | Plaintiff's Objection | Cross[1] Designations | Objections |
|---|---|---|---|---|
| Gregory Richmond (by videotape if unavailable) | 4:9-5:24 | | | |
| | 11:19-12:1 | | | |
| | 12:14-17:14 | 17:8-11: calls for a legal conclusion | | |
| | 17:25-20:21 | | | |
| | 21:14-22:5 | | | |
| | 26:6-28:2 | Object to testimony to the extent it calls for legal conclusion about the meaning of DOT regulations | | |
| | 28:14-31:3 | Object to testimony to the extent it calls for legal conclusion about the meaning of DOT regulations | | |
| | 31:4-36:8 | Witness's uncommunicated subjective interpretation of policy is not relevant | | |
| | 36:24-67:13 | 37:4-12: question with no response<br><br>37:24-38:3: Confusing, calls for a legal conclusion about definition of merchant reserve | | |

---

[1] Cross-Designations are not limited to the Defendant designation excerpt with which they align on chart.

| Witness | Defendant's Deposition Designation | Plaintiff's Objection | Cross[1] Designations | Objections |
|---|---|---|---|---|
| | | 39:5-9: Question includes facts not in answer<br><br>40:24-41:15:  Relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03<br><br>47:7-11: Question with no response<br><br>48:8-49:12 Relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03<br><br>56:13-20: lack of foundation; hearsay; relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03<br><br>56:21-57:13: lack of foundation; hearsay; relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03<br><br>59:21-22 (last sentence): lack of foundation; hearsay<br><br>63:8-25: relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03<br><br>64:4-7: lack of foundation; hearsay; relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03 | | |
| | 77:13-80:1 | | | |
| | 80:18-87:24 | | | |
| | 88:9-89:2 | Witness's uncommunicated subjective interpretation of policy is not relevant | | |
| | 100:14-104:10 | 104:7-10: Witness's uncommunicated subjective | | |

| Witness | Defendant's Deposition Designation | Plaintiff's Objection | Cross[1] Designations | Objections |
|---|---|---|---|---|
| | | interpretation of policy is not relevant | | |
| | 133:18-25 | | | |
| | 145:24-149:17 | | | |
| **Richard Fox** | 6:1-4 | | 84:20-86:23 98:7-99:23 100:16-102:5 175:9-176:2 | |
| | 12:1-15:14 | | | |
| | 84:3-19 | FRE 403,802 | | |
| | 99:24-100:15 | FRE 403,802 | | |
| | 179:2-180:13 | FRE 403,802 | | |
| **Fred Horn (by videotape if unavailable)** | 4:1-18 | | 52:19-53:10 68:12-21 73:25-74:13 81:10-16 | |
| | 13:4-16:6 | | | |
| | 19:23-20:25 | | | |
| | 36:7-37:3 | 37:1-3, FRE 403 | | |
| | 37:9-38:20 | | | |
| | 39:20-40:12 | | | |
| | 41:10-43:19 | | | |
| | 43:24-45:1 | | | |
| | 45:20-46:4 | | | |
| | 48:9-49:10 | | | |
| | 50:12-52:18 | | | |
| | 53:11-54:13 | 53:21-54:13 FRE 401-403 | | |
| | 55:5-22 | | | |
| | 55:23-56:24 | | | |
| | 60:8-16 | FRE 403 | | |
| | 68:22-69:17 | | | |
| | 70:20-72:24 | | | |
| | 74:14-20 | | | |
| | 75:6-19 | | | |
| | 78:1-80:19 | | | |
| | 81:17-82:11 | | | |
| | 85:1-86:5 | | | |
| **Robert Perro** | 5:1-5 | | 85:14-87:1 88:8-89:16 97:2-13 100:9-101:5 156:16-22 | |
| | 7:5-8:5 | | | |
| | 83:8-84:21 | Lacks Foundation; FRE 401-403. | | |
| | 123:19-124:3 | FRE 401-403. | | |

| Witness | Defendant's Deposition Designation | Plaintiff's Objection | Cross[1] Designations | Objections |
|---|---|---|---|---|
| | 156:23-157:3 | Calls for speculation; FRE 401-403. | 159:7-160:7 | |
| | 160:1-21 | FRE 401-403 | | |
| | 168:4-7 | FRE 401-403 | | |
| | 169:6-170:18 | FRE 401-403 | | |
| **Trent Voigt (by videotape)** | 5:3-24 | | | |
| | 10:23-13:3 | | | |
| | 16:6-23 | | | |
| | 23:1-24:8 | Relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03 | | |
| | 25:24-27:16 | Relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03; calls for legal conclusion regarding DOT requirements | | |
| | 75:19-76:3 | Lack of foundation; relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03 | | |
| | 82:16-23 | Relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03 | | |
| | 102:10-103:5 | Relevance, danger of confusion and unfair prejudice, Fed. R. Evid. 401-03 | | |

X.   TRIAL EXHIBITS

Below is a list of exhibits and all unresolved objections.

PLAINTIFF'S EXHIBIT LIST:

| Plaintiff Ex. No. | Date | Document Description | Bates Numbers | Defendant's Objection | Admitted |
|---|---|---|---|---|---|
| 1 | 10/30/03 | Merchant ISO Agreement | Jetpay 0000001 - Jetpay 0000021 | | |
| 2 | 11/10/06 | Largent to Jones regarding Southern Sky air d/b/a Myrtle Beach Direct | Merrick 001193,Merrick 001205 | | |
| 3 | 12/21/06 | Josh to Hayden regarding Myrtle Beach Clarification on Land Sales- Executive Summary | Merrick 000024 - Merrick 000028 | | |
| 4 | 01/19/07 | Tadajewski to Hayden, Fox et al re Approval of Myrtle Beach | Merrick 001171 | none | |
| 5 | 01/22/07 | Merchant ISO Agreement | Merrick 000251 - Merrick 000271 | | |
| 6 | 01/23/07 | Tadajewski to Moudry, Hayden, Soderstrom, Horn, Dominic, Fox, and Sebatian regarding Endorsement #1- Revised 1-23-07- Merrick Bank Endorsement #1 | Merrick 000584 - Merrick 000585 | | |
| 7 | 02/13/07 | General Fidelity Insurance Company- Merchant Chargeback Insurance Policy (8/1/2006 - 8/1/2007) | Merrick 000162 - Merrick 000175 | | |
| 8 | 02/28/07 | Tadajewski to Fox, Hayden, Soderstrom regarding Various Merchants/ ISO's | Merrick 000587 | | |
| 9 | 08/01/07 | General Fidelity Insurance company- Merchant Chargeback Insurance Policy (8/1/2007 - 8/1/2008) | Merrick 000176 - Merrick 000184 | | |
| 10 | 11/27/07 | Tadajewski to Horn, Soderstrom, Fox, and Hayden regarding Revised Endorsement #1 and | Merrick 000631 - Merrick 000632 | | |

| | | Declaration of Cancelled Merchant | | | |
|---|---|---|---|---|---|
| 11 | 06/19/08 | Watson to Urrutia, Berman, Perro, Young and Jones regarding Airlines | Merrick 000676 - Merrick 000678 | relevance, subjective intent of Merrick's employees uncommunicated to Chartis (Summ. J. Op. 12) – motion *in limine* | |
| 12 | 03/10/10 | Moss to Stivali and Camillo regarding Letter of Understanding- Chartis Letter of Understanding | CSIC-E-000753 - CSIC-E-000755 | relevance - law of the case regarding Richmond/RGS acting as Merrick's broker – motion *in limine* | |
| 13 | 03/24/10 | Stivali to O'Neil regarding Uncollectible Chargeback- UCB Pipeline | CSIC-E-001248 - CSIC-E-001249 | relevance - law of the case regarding Richmond/RGS acting as Merrick's broker – motion *in limine* | |
| 14 | 06/30/10 | Stivali to McNally and Leone regarding Claims/Underwriting Call-Uncollectible Chargeback Summary | CSIC-E-000867 - CSIC-E-000872 | relevance - law of the case regarding Richmond/RGS acting as Merrick's broker – motion *in limine* | |
| 15 | 08/20/10 | Richard to Jeff, Kacey, Michael, Natalie regardoing Uncollectible Chargeback and RDC/Check 21 | CSIC-E-000758 - CSIC-E-000759 | relevance - law of the case regarding Richmond/RGS acting as Merrick's broker – motion *in limine* | |
| 16 | 10/28/10 | Young to Fox re Top 20 Report | Merrick 002159 -60 | relevance, subjective intent of Merrick's employees uncommunicated to Chartis | |

| | | | | (Summ. J. Op. 12) – motion *in limine* | |
|---|---|---|---|---|---|
| 17 | 11/29/10 | Richmond to Stivali regarding CardWorks/Merrick Bank-Merrick Uncollectible Premium Report for Chartis; Merrick Bank Merchant Report for Chartis | CSIC-E-001374 - CSIC-E-001376 | Relevance, Law of the case – coverage is not illusory – motion *in limine* | |
| 18 | 01/04/11 | Herzfeld to Urrutia, Watson, Jones, Young, Perro and Berman regarding Merrick Bank-Merrick NonRenewal Notice | Merrick 001358 - Merick 001360 | | |
| 19 | 01/06/11 | Halsey to Stivali regarding Merrick Bank Uncollectible Chargeback Policy- Uncollectible chargeback Insurance Policy | CSIC 0000136 - CSIC 0000164 | | |
| 20 | 02/03/11 | Fox to Herzfeld, kenney, Hayden, and Ficalora regarding CB Policy Extension- ACE Policy Extension endorsement thorugh July 1, 2011 | Merrick 011200 - Merrick 011202 | relevance | |
| 21 | 02/10/11 | Orlowicz to Stivali re Merrick Data | CSIC-E-001537- CSIC-E-001550 | Relevance, Law of the case – coverage is not illusory – motion *in limine* | |
| 22 | 02/10/11 | Stivali to Orlowicz regarding Reserves-Chargeback Insurance 1110 | CSIC-E-001574 - CSIC-E001575 | | |
| 23 | 02/10/11 | Orlowicz to Stivali regarding Merrick Data | CSIC-E-001565 - CSIC-E-001569 | Law of the case – coverage is not illusory – motion *in limine* | |
| 24 | 02/10/11 | Stivali to Orlowicz regarding Reserves-Chargeback Insurance 1110 | CSIC-E-001570 | Law of the case – coverage is not illusory – motion *in limine* | |
| 25 | 02/25/11 | Stivali to Richmond regarding Requested Information | CSIC 0000303 - CSIC 0000305 | relevance - law of the case regarding | |

| | | | | Richmond/RGS acting as Merrick's broker – motion *in limine* | |
|---|---|---|---|---|---|
| 26 | 03/15/11 | Stivali to gordeon re Richmond Commission | CSIC-E-001643-4 | relevance - law of the case regarding Richmond/RGS acting as Merrick's broker – motion *in limine* | |
| 27 | 04/05/11 | Fox to Kenney re Top 20 Report | Merrick 011257-011258 | relevance, subjective intent of Merrick's employees uncommunicated to Chartis (Summ. J. Op. 12) – motion *in limine* | |
| 28 | 06/03/11 | Richmond to Stivali regarding Merrick Rating | RGS 0000872 | | |
| 29 | 06/24/11 | Orlowicz to Stivali regarding Merrick Rework Reflecting Reserves | CSIC-E-001820 - CSIC-E-001824 | Law of the case – coverage is not illusory – motion *in limine* | |
| 30 | 06/27/11 | Camillo to Stivali regarding Uncollectible Chargeback Authority | CSIC 0000390 - CSIC 0000391 | relevance - law of the case regarding Richmond/RGS acting as Merrick's broker – motion *in limine* | |
| 31 | 06/29/11 | Richmond to Jones, Herzfeld, and Fox regarding Chartis UCC Bidner- Chartis Uncollectible chargeback Insurance Binder | Merrick 001091 - Merrick 001094 | | |
| 32 | 06/29/11 | Series of emails between Stivali and Richmond regarding Quote | CSIC 0000242 - CSIC 0000244, CSIC-E-002077 - CSIC-E-002085 | relevance | |
| 33 | 07/01/11 | Camillo to Grella and Giordano regarding Merrick Writeup | CSIC-E-000772 - CSIS-E-000773 | relevance | |

| | | | | |
|---|---|---|---|---|
| 34 | 07/01/11 | Chartis Uncollectible Chargeback Policy (period 7/1/2011 - 7/01/2012) | CSIC-E-000076 - CSIC-E-000090; CSIC-E-000043 - CSIC-E-000073; Merrick 001136 - Merrick 001168; version filed with complaint [Dkt. No. 1] | |
| 35 | 08/17/11 | Cam to Stivali regarding Merrick Bank Corporation- Policy #7078195- July 2011 Monthly Report | CSIC-E-002389 - CSIC-E-002399 | Law of the case – coverage is not illusory – motion *in limine* |
| 36 | 03/21/12 | Tadajewski to Stivali regarding Merrick Bank- Policy #7078195 | CSIC 0000227 - CSIC 0000229 | |
| 37 | 03/26/12 | Stivali to Camillo re: | CSIC-E-003544 - CSIC-E-003545 | none |
| 38 | 03/27/12 | Stivali to Camillo regarding Trustee requests Direct Air bankruptcy by converted to Chapter 7 | CSIC-E-000787 - CSIC -E-000789 | none |
| 39 | 03/27/12 | Trokenheim to Fox regarding Claim No. 550-083571 | CSIC 0004458 | none |
| 40 | 03/29/12 | Stivali to Camillo regarding Charlie Orlowicz's Surprise Retirement Party- Shshsh! | CSIC-E-003963 - CSIC-E-003965 | relevance |
| 41 | 03/30/12 | Orlowicz to Stivali regarding Uncollectible Chargeback | CSIC-E-003989 - CSIC-E-003994 | Law of the case – coverage is not illusory – motion *in limine* |
| 42 | 04/20/12 | Stivali to Tadajewski regarding RGS Underwriting Template and UCC Application | CSIC-E-004110 - CSIC-E-004112 | relevance - law of the case regarding Richmond/RGS acting as Merrick's broker – motion *in limine* |
| 43 | 05/10/12 | Flammer to Fox regarding claim 550-083571 | CSIC 0004477 - CSIC 0004486 | none |
| 44 | 05/16/12 | Stivali to Camillo | CSIC-E-004133 | none |
| 45 | 05/21/12 | Stivali to Camillo regarding Merrick Bank File | CSIC-E-004152 - CSIC-E- 004153 | none |
| 46 | 06/05/12 | Stivali to Camillo regarding Merrick Bank | CSIC-E-004165 - CSIC-E-004166 | relevance |

| | | | | | |
|---|---|---|---|---|---|
| | | Claim Meeting and UCB Extension- June 15th in New York- Chartis response letter | | | |
| 47 | 07/13/12 | Brusstar to Gurfein regarding Merrick bank-Direct Air | | | |
| 48 | 09/05/12 | Leone to Gurfein regarding 550-083571 Merrick Bank/Myrtle Beach Direct Air | CSIC-E-000705 - CSIC-E-000715 | | |
| 49 | 03/03/14 | Trustee's Report on Direct Air's Operations and Shortfall | | | |
| 50 | 12/01/08 | ACE Insurance Policy (12-1-2008 - 12-1-2009) | Merrick 000204 - Merrick 000225 | | |
| 51 | | Signing Authorization for Myrtle Beach | Merrick 001170 | authenticity and relevance, subjective intent of Merrick's employees uncommunicated to Chartis (Summ. J. Op. 12) – motion *in limine* | |
| 52 | | Excerpts of Merrick Bank Uncollectible Chargeback Insurance- Calculation | CSIC-E-00005946-5966 | | |
| 53 | | Claim Notes | CSIC 0004447 - CSIC 0004455 | relevance to the extent offered for bad faith claim – motion *in limine* | |
| 54 | 09/23/15 | Keilman Plea Allocution | | relevance | |
| 55 | | DirAir Chbk &Pmt Raddix.xlsb | Matt Evans Chargeback Spreadsheet - provided to Chartis 11/25/13 | relevance, hearsay, not business records | |
| 56 | | Dir Air Pmt & Charge Raddixx [Matt Evans Chargeback Spreadsheet - provided to Chartis 11/25/13] | Matt Evans Chargeback Spreadsheet - provided to Chartis 11/25/13 | relevance, hearsay, not business records | |

| | | | | |
|---|---|---|---|---|
| 57 | | Radixx Data Flow Chart [Matt Evans Chargeback Spreadsheet - provided to Chartis 11/25/13] | Matt Evans Chargeback Spreadsheet - provided to Chartis 11/25/13 | relevance, hearsay, not business records |
| 58 | | Merrick Merchant Policy Section 4030 - Board Approved Versions April 2006 through March 2011 | Merrick 017905 - 47 Merrick 017989-018258 | relevance, subjective intent of Merrick's employees uncommunicated to Chartis (Summ. J. Op. 12) – motion *in limine* |
| 59 | | Sample BIN Breakdown Reports from each of the Card Associations covering 12 of the approximately 300 day period during which Merrick paid Direct Air chargebacks | Merrick 016824 – Merrick 017724 | relevance, hearsay, not business records |
| 60 | | Radixx data files (charge.txt; codes.txt; payments.txt; Reaccom.txt; segment.txt; Taxes.txt) | Provided to Chartis's accountants, Weiser Mazars, in August 2013 | authenticity, hearsay, chargeback amount is not in dispute (Summ. J. Op. 4) |
| 61 | | 14 C.F.R. Part 380 | | province of the Court |
| 62 | | JP Settlement Agreement [In the event allocation is relevant factual issue] | | none |
| 63 | | Proof of Fees paid to support JP Allocation [In the event allocation is relevant factual issue] | Merrick Fees 000001-001083 | Merrick 1174-1183 – relevance, hearsay, not business records, no evidence provided of reasonableness of fees – motion *in limine* |
| 64 | | Documents reflecting proof of legal lees sought as bad faith damages | | Relevance, no evidence provided of reasonableness of fees – motion *in limine* |
| 65 | | Trial Demonstratives [To | | To be discussed |

| | | be disclosed when prepared] | | | |
|---|---|---|---|---|---|

DEFENDANT'S EXHIBIT LIST

| Trial Ex. No. | Document Date | Description | Offered into Evidence By | Objection | Admitted into Evidence Y/N |
|---|---|---|---|---|---|
| 1 | | Chartis Specialty Uncollectible Insurance Policy, 2011-2012, with email dated 9/8/11 (Merrick 1136-1168) (Jt. Exh. 1) | | | |
| 2 | | GFIC Policy 2006-2007 (Merrick 162-175) (Jt. Exh. 2) | | | |
| 3 | January 4, 2007 | Emails re: FW: Merrick Bank – Merchant Approval: Myrtle Beach Direct Air & Tours (RGS 22-39; 68-76) (Jt. Exh. 3) | | | |
| 4 | January 23, 2007 | Email re: Endorsement #1 – Revised 1/23/07 (Merrick 584-585) (Jt. Exh. 4) | | | |
| 5 | April 2, 2007 | Email re: Merrick Bank – Revised Endorsement #1 (Merrick 588-589) (Jt. Exh. 5) | | | |
| 6 | | ACE Policy 2008-2009 (Merrick 204-225) (Jt. Exh. 6) | | | |
| 7 | September 5, 2012 | Email re: 550-083571 Merrick Bank/Myrtle Beach Direct Air (CSIC-E-000705-000715) (Jt. Exh. 8) | | | |
| 8 | February 28, 2007 | Email re: Various Merchants/ISO's (Merrick 587) (Jt. Exh. 9) | | 403, 802 | |
| 9 | February 10, 2011 | Email re: FW: Merrick Merchant's w/ reserves (CSIC-E-001527-001528 [9 pages stamped 001528]) | | 403, 802 | |

| Trial Ex. No. | Document Date | Description | Offered into Evidence By | Objection | Admitted into Evidence Y/N |
|---|---|---|---|---|---|
| | | (Jt. Exh. 13) | | | |
| 10 | February 10, 2011 | Email re: Merrick Merchant's w/ reserves (CSIC-000110-000111) (Jt. Exh. 14) | | | |
| 11 | March 21, 2012 | Email re: Merrick Bank – Policy #7078195 (CSIC 000227-000229) (Jt. Exh. 15) | | | |
| 12 | | Direct Air JetPay Application (Merrick 447-457) (Jt. Exh. 22) | | 401, 402, 403, foundation | |
| 13 | | GFIC Policy 2007-2008 (Merrick 176-184) (Jt. Exh. 23) | | | |
| 14 | May 23-24, 2012 | Forbearance Agreement (Merrick 310-312) (Jt. Exh. 24) | | 401, 402, 403 | |
| 15 | August 28, 2012 | Letter (Merrick 5713) (Jt. Exh. 26) | | 401, 402, 403 | |
| 16 | December 28, 2012 | Escrow Agreement (Merrick 8691-8709) (Jt. Exh. 27) | | 401, 402, 403 | |
| 17 | December 21, 2006 | Email re: Myrtle Beach Clarification on Land Sales (Merrick 28; 24-27) (Jt. Exh. 29) | | | |
| 18 | | Merrick Underwriting File for Direct Air (excerpts) (Merrick 1170-1175; 1180-1192; 1221-1229) (Jt. Exh. 30) | | 401, 402, 403, Foundation | |
| 19 | November 3, 2011 | Email re: binding of Chartis Specialty Policy (Merrick 1675) (Jt. Exh. 32) | | 403, 802, Foundation | |
| 20 | March 3, 2014 | Trustee's Report on Direct Air's Operations and Shortfall (Jt. Exh. 35) (ECF No. 446) | | | |
| 21 | October 7, 2013 | Merrick Answer to Second | | 401, 402, | |

| Trial Ex. No. | Document Date | Description | Offered into Evidence By | Objection | Admitted into Evidence Y/N |
|---|---|---|---|---|---|
| | | Amended Complaint and Counterclaim (D. Utah) (Jt. Exh. 36) (ECF No. 60) | | 403 | |
| 22 | July 13, 2012 | Letter re: Merrick Bank – Direct Air (CSIC 4503-4507) (Jt. Exh. 37) | | | |
| 23 | November 27, 2007 | Email re: Revised Endorsement #1 and Declaration of Cancelled Merchant (Merrick 631-632) (Jt. Exh. 38) | | | |
| 24 | October 30, 2003 | Merchant ISO Agreement (JetPay 1-38) (Jt. Exh. 39) | | 401, 402, 403 | |
| 25 | January 22, 2007 | Merchant ISO Agreement (Merrick 251-290) (Jt. Exh. 40) | | 401, 402, 403 | |
| 26 | | Merrick's Uncollectible Chargeback Insurance Application (CSIC 136-155; 163-164) (Jt. Exh. 51) | | | |
| 27 | June 29, 2011 | Email attaching Chartis Specialty Binder (Merrick 1091-1094) (Jt. Exh. 52) | | | |
| 28 | August 2, 2011 | Email from L. Tadajewski to T. Stivali re: Merchants Processing $6M (CSIC-E-002258-002260) (Jt. Exh. 56) | | 401, 402, 403, 802, Foundation | |
| 29 | | Excerpts from materials from Merrick's underwriting file: VNB Correspondence (Merrick 001193; 001205) (Jt. Exh. 57) | | | |
| 30 | February 4, 2011 | Email attaching memo from Ray Quinney & Nebeker dated March 8, 2010 (Merrick 11203-11210) (Jt. Exh. 58) | | 401, 402, 403 | |
| 31 | January 4, 2011 | Email forwarding Richmond email (Merrick | | | |

| Trial Ex. No. | Document Date | Description | Offered into Evidence By | Objection | Admitted into Evidence Y/N |
|---|---|---|---|---|---|
| | | 1358-1360) (Jt. Exh. 59) | | | |
| 32 | February 16, 2011 | Email re: quote (RGS 872) (Jt. Exh. 60) | | | |
| 33 | October 26, 2012 | Email chain re: JetPay cash flow (Merrick 10054-10055) (Jt. Exh. 66) | | 401, 402, 403 | |
| 34 | | Excerpts of Merrick Bank Uncollectible Chargeback Insurance – Calculations (CSIC-E-005946, 005951-005952) (Jt. Exh. 68) | | | |
| 35 | February 10, 2011 | Email re: Reserves, with attached two page spreadsheet (CSIC-E-001574-001575) (Jt. Exh. 69) | | | |
| 36 | July 22-26, 2016 | Settlement Agreement and Release between JetPay, WLES, L.P., and Merrick in *JetPay v. Merrick*, No. 2:12-cv-000197-RJS (ECF No. 181-1) | | | |
| 37 | October 30, 2015 | Merrick's Responses and Objections to Plaintiffs' First Set of Interrogatories and Requests for Production to Defendant in *JetPay v. Merrick* (Merrick Fees 1059-73) | | 401, 402, 403 | |
| 38 | January 4, 2007 | Email from Lori Tadajewski re: merchant approval of Direct Air (Email #1 of 2) (RGS 11-21) | | 403, 802, Foundation | |
| 39 | January 4, 2007 | Email from Lori Tadajewski re: merchant approval of Direct Air (Email #2 of 2) (RGS 22-113) | | 403, 802, Foundation | |
| 40 | March 8, 2010 | Memo to Gregory Richmond from Rick Rose | | 401, 402, 403 | |

| Trial Ex. No. | Document Date | Description | Offered into Evidence By | Objection | Admitted into Evidence Y/N |
|---|---|---|---|---|---|
| | | re:  Comparison of ACE and Chartis Uncollectable Chargeback Insurance Policies (RGS 143-148) | | | |
| 41 | September 1, 2011 | Email from Lori Tadajewski to Richard Fox forwarding Chartis Policy (RGS 161-193) | | | |
| 42 | January 12, 2007 | Email chain re: additional information for merchant approval of Direct Air (RGS 8-10) | | 403, 802, Foundation | |
| 43 | March 21, 2012 | Email thread from Lori Tadajewski to Tom Stivali re:  cancellation endorsement for Myrtle Air ( RGS 207-209) | | | |
| 44 | February 28, 2007 | Email from L. Tadajewski to R. Fox re:  Various Merchants/ISO's (Merrick 587) | | | |
| 45 | April 2, 2007 | Email re:  Endorsement #1 revising reserve for Myrtle Beach Direct Air (DOT regulation) (Merrick 588-589) | | 401, 402, 403, 802, Foundation [Note: same as Chartis 5] | |
| 46 | February 28, 2007 | Email thread re:  Myrtle Beach subject to DOT regulation and securing adequate insurance and reserve coverage ("subject to DOT regulation" – End. 1 to be amended) (Merrick 606-607) | | 403 [Relevant portion of email is Chartis 44] | |
| 47 | | INTENTIONALLY LEFT BLANK | | | |
| 48 | June 7, 2007 | Email with revised Endorsement #1 (Merrick 629-630) | | | |
| 49 | April 27, 2015 | Third Amended Complaint | | 401, 402, | |

| Trial Ex. No. | Document Date | Description | Offered into Evidence By | Objection | Admitted into Evidence Y/N |
|---|---|---|---|---|---|
| | | in *Merrick Bank Corporation v. Valley National Bank*, No. 2:13-cv-07756-MCA-MAH (ECF No. 64) | | 403, 802 | |
| 50 | October 14, 2014 | Third Amended Complaint in *JetPay v. Merrick*, No. 2:12-cv-00197-RJS-BCW (ECF No. 109) | | 401, 402, 403, 802 | |
| 51 | October 28, 2014 | Answer to Third Amended Complaint and Counterclaim in *JetPay v. Merrick*, No. 2:12-cv-00197-RJS-BCW (ECF No. 110) | | 401, 402, 403 | |
| 52 | August 27, 2014 | Third Amended Complaint in *BCC Merchant Solutions v. JetPay, et al.*, No. 3:12-cv-05185-B (ECF No. 90) | | 401, 402, 403, 802 | |
| 53 | September 16, 2013 | Complaint in *Merrick v. Tull, et al.*, No. 4:13-cv-02519-MGL (ECF No. 1) | | 401, 402, 403, 802 | |
| 54 | March 4, 2013 | Motion of Chapter 7 Trustee For Orders Approving: … (2) Stipulation Compromising and Settling Certain Claims to Funds Held by Valley National Bank in Certain Depository Accounts, in *In re: Southern Sky Air & Tours, LLC d/b/a Direct Air*, Case No. 12-40944-MSH (D. Mass.) (ECF No. 264, 264-2, 264-3, 264-4) | | 401, 402, 403, 802 | |
| 55 | June 5, 2013 | Order Approving Motion for Approval of Stipulation Compromising and Settling Certain Claims to Funds in Depository Accounts at Valley National Bank, in *In* | | 401, 402, 403 | |

| Trial Ex. No. | Document Date | Description | Offered into Evidence By | Objection | Admitted into Evidence Y/N |
|---|---|---|---|---|---|
| | | *re: Southern Sky Air & Tours, LLC d/b/a Direct Air*, Case No. 12-40944-MSH (D. Mass.) (ECF No. 348) | | | |
| 56 | June 23, 2014 | Merrick's Response to Chartis Rule 56.1 Statement  (ECF No. 58) | | 401, 402, 403, 802 | |
| 57 | April 21, 2014 | Plaintiff's 56.1 Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment (ECF No. 47) | | 401, 402, 403, 802 | |
| 58 | September 26, 2016 | Reponses and Objections to Defendant's Second Set of Interrogatories to Plaintiff | | 401, 402, 403 | |

## XI.   THE DEFENDANT DOES NOT CONSENT TO LESS THAN A UNANIMOUS VERDICT

SATTERLEE STEPHENS BURKE & BURKE LLP

By:_____*/s/Daniel G. Gurfein*_____
     Daniel G. Gurfein, Esq.
     James Regan, Esq.
     Andrew Fish, Esq.

Attorneys for Plaintiff

230 Park Avenue
New York, NY 10169
Tel: (212) 818-9200
Fax: (212) 818-9606
Email: dgurfein@ssbb.com
Email: jregan@ssbb.com
Email: afish@ssbb.com

Dated:  October 21, 2016


BRESSLER, AMERY & ROSS, P.C.

By:_____*/s/ Robert Novack*_____
     Robert Novack, Esq.
     Charles W. Stotter, Esq.
     Nicholas I. Bamman, Esq.

Attorneys for Defendant

17 State Street – 34th Floor
New York, NY 10004
Tel: (212) 425-9300
Fax: (212) 425-9337
Email: rnovack@bressler.com
Email: cstotter@bressler.com
Email: nbamman@bressler.com

Dated:  October 21, 2016