UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERRICK BANK CORPORATION, | Civil Action No. 12 CIV 7315 (RJS) |
| | ECF Case |
| Plaintiff, | |
| | |
| -vs.- | |
| | |
| CHARTIS SPECIALTY INSURANCE COMPANY, | |
| | |
| Defendant. | |

---

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S PRE-TRIAL MEMORANDUM OF LAW

---

BRESSLER, AMERY & ROSS. P.C.
17 State Street
New York, NY  10004
(212) 425-9300

*Attorneys for Defendant Chartis*
*Specialty Insurance Company*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT....................................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.       THE VNB ESCROW WAS A MERCHANT RESERVE WITHIN THE
         MEANING OF THE POLICY......................................................................................... 3

II.      COVERAGE IS NOT ILLUSORY UNDER CHARTIS'S INTERPRETATION ............. 7

III.     GREGORY RICHMOND'S KNOWLEDGE IS IMPUTED TO MERRICK AS A
         MATTER OF LAW ................................................................................................. 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. City of New York*,
214 A.D.2d 692 (2d Dep't 1995) ...................................................................................4

*Aspen Specialty Ins. Co. v. 4 NYP Ventures LLC*,
2016 U.S. Dist. LEXIS 23274 (S.D.N.Y. 2016) ............................................................7

*Bohlinger v. Zanger*,
306 N.Y. 228 (1954) .....................................................................................................9

*Evvtex Co. v. Hartley Cooper Assocs. Ltd.*,
102 F.3d 1327 (2d Cir. 1996)........................................................................................9

*Hart v. RCI Hospitality Holdings, Inc.*,
90 F. Supp. 3d 250, 278-79 (S.D.N.Y. 2015) ................................................................7

*Israel v. Chabra*,
12 N.Y.3d 158 (2009) ...................................................................................................4

*Jacobson Family Invs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
955 N.Y.S.2d 338 (1st Dep't 2012) ...............................................................................4

*Lend Lease (US) Constr. LMB Inc. v Zurich Am. Ins. Co.*,
136 A.D.3d 52 (1st Dep't 2015).....................................................................................7

*Lugosch v. Congel*,
219 F.R.D. 220 (N.D.N.Y. 2003)...................................................................................8

*N. Edelson Sons Corp. v. Nat'l Union Fire Ins. Co.*,
1994 U.S. Dist. LEXIS 7463 (S.D.N.Y. Jun. 6, 1994) ..................................................4

*Nat'l Specialty Ins. Co. v. 218 Lafayette St. Corp. LLC*,
2008 U.S. Dist. LEXIS 18172 (S.D.N.Y. March 7, 2008)..............................................9

*Ricciardi v. Bernard Janowitz Constr. Corp.*,
2012 N.Y. Misc. LEXIS 4231 (N.Y. Sup. Ct., Queens Cnty., Aug. 13,
2012) ............................................................................................................................4

*Riedman Agency, Inc. v. Meaott Constr. Corp.*,
    90 A.D.2d 963 (4th Dep't 1982) ....................................................................................9

*United States Fire Ins. Co. v. Nine Thirty FEF Invs., LLC*,
    132 A.D.3d 413 (1st Dep't 2015)....................................................................................7

**Other Authorities**

Fed. R. Evid. 403 .............................................................................................................7

Defendant, Chartis Specialty Insurance Company submits this memorandum of law in opposition to Plaintiff Merrick Bank Corporation's Pre-Trial Memorandum of Law [ECF No. 114].

## PRELIMINARY STATEMENT

Merrick's Pre-Trial Memorandum of Law misconstrues the issues remaining to be adjudicated at trial and reargues issues decided by this Court's March 20, 2015 decision that denied Merrick's motion for summary judgment and granted in part and denied in part Chartis's motion for summary judgment.  ECF No. 64 (the "SJ Order").

Merrick's interpretation that "held by" in the definition of merchant reserve necessarily meant that the VNB Escrow must be physically held by Merrick is wrong.  The Court rejected that argument, SJ Order at 8, noting that Chartis presented strong objective evidence supporting its interpretation, although the Court ruled that based on all the extrinsic evidence the jury must determine whether the reference to "DOT Regulations" in Endorsement 4 meant that the VNB Escrow constituted Direct Air's merchant reserve. *Id.* at 12-13, 15.  The Court also determined that Merrick was "bound by [the] actions and knowledge" of its insurance broker, Gregory Richmond, who agreed with Chartis that coverage is only excess of what was legally required to be contained within the VNB Escrow. *Id.* at 12.

Merrick's argument that Chartis's interpretation would render coverage illusory under the Policy is also wrong because coverage was available for more than $2 billion in merchant sales processed by Merrick.  Under well-established New York law, a policy must afford no coverage to be illusory.  A lack of coverage for Direct Air – 1 of  140 merchants under the Policy – for this particular claim, does not demonstrate illusory coverage.  As a matter of law, it is not possible

that the jury could find coverage was illusory.[1]  Moreover, Merrick's argument that all Direct Air customer payments it processed were placed in the VNB Escrow and thus should have been available to reimburse any loss, making insurance coverage superfluous, is belied by the fact that Merrick did not disclose to Chartis, until its motion for summary judgment, that *a different bank* processed all of the same-day Direct Air transactions, which were *not* required to be placed in the VNB Escrow.  These same-day transactions would have been entitled to coverage, subject to the terms and conditions of the Policy.  Merrick did not inform Chartis of this information during the underwriting process, nor during discovery in this action.   In any event, Merrick unsuccessfully made its "illusory" argument on summary judgment.  It cannot reargue that same issue now.

Further, Merrick's argument on Gregory Richmond's agency is both legally and factually incorrect, and contradicts the Court's summary judgment decision. The Court held that Richmond was Merrick's insurance broker and legal representative and  "Merrick will be bound by Richmond's actions." *Id.* at 10.  Richmond's knowledge is imputed to Merrick as a matter of law.  Moreover, contrary to Merrick's argument that Richmond's "mere interpretation of an ambiguous contract" cannot be imputed to Merrick, the evidence shows that Merrick personnel with whom he spoke shared his understanding.   Indeed, Richmond testified that he had discussions with a Merrick officer "during the negotiation of the Chartis policy" "indicating that the escrow account at the VNB would be treated as a merchant reserve account as that's defined in the Chartis policy."  Richmond Tr. 101:1-13 [ECF No. 53-1].  Merrick presented on summary judgment whatever evidence it had on Richmond's agency, including Richmond's purported assistance in underwriting merchants to be included in the Policy, and an agreement Richmond

---

[1]  The inadmissibility of evidence on illusory coverage is addressed in Chartis's memorandum of law in support of its motion *in limine* [ECF No. 113].

had with Chartis on the marketing of uncollectible chargeback policies, which the Court rejected.

Merrick may not re-litigate the agency of Richmond.

**ARGUMENT**

**I.     THE VNB ESCROW WAS A MERCHANT RESERVE WITHIN THE MEANING OF THE POLICY**

Merrick is wrong that the "held by" language in the Policy is read out of the Policy by

Chartis's interpretation, because the merchant agreement with Direct Air allowed the reserve to

be at another institution and Merrick understood that the VNB Escrow constituted a merchant

reserve even though it was not held by Merrick.  As the Court noted in its decision on summary

judgment, the Policy provides that any loss is limited to the amount it exceeds the deductible

plus the *greater* of the following two amounts:  (i) the balance actually sitting in the merchant

reserve account, and (ii) the amount indicated as the merchant reserve account balance particular

to the merchant in question in Endorsement 4 of the Policy.  SJ Order at 3 [ECF No. 64].

Endorsement 4 contains the merchant reserves established for Merrick's high volume merchants

by specifying a dollar amount, or otherwise describing the reserve in words.  For Direct Air,

Endorsement 4 lists the merchant reserve as "DOT Regulations."

Contrary to Merrick's argument, the definition of Loss does not require a merchant

reserve to be "held by" Merrick.  Loss is defined as:

> **Loss** means the amount of **uncollectible chargeback** resulting directly from a **covered transaction** in excess of the balance in any applicable **merchant reserve account** *regardless of whether such account* (i) *is in the custody or possession of an **insured***, or (ii) may be legally drawn down by any **insured**.

Indeed, this Court held that "Merrick's interpretation would give little or no meaning to

the 'DOT Regulations' notation in Endorsement 4, rendering that notation virtually

indistinguishable from the *blank spaces* in the 'scheduled reserve' column for other merchants."

SJ Order at 8 [ECF No. 64] (emphasis in original).   The Court pointed out the fallacy of

Merrick's argument by quoting from its own brief:

> [A]ccording to Merrick, the notation merely memorialized the parties' 'understanding that the chargeback risk associated with Direct Air was already mitigated by the normal business operations mandated by federal regulations, which obviated the need for a merchant reserve account.'

*Id.*

The only way to give effect to all words in the Policy is to interpret "held by" to not

require physical possession, but to be "held for" – *i.e.* to be held for the benefit of Merrick.

Merrick was the beneficiary of proceeds in the VNB Escrow in the amount of $669,886.06.   If

the VNB Escrow was not a merchant reserve, Merrick would not have been entitled to that sum.

Established canons of contract and insurance policy interpretation support Chartis's

interpretation.   *See, e.g., Jacobson Family Invs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,

Pa.,* 955 N.Y.S.2d 338, 347-48 (1st Dep't 2012) (operative language of an insurance policy

controls over the definitional);   *Ricciardi v. Bernard Janowitz Constr. Corp.*, 2012 N.Y. Misc.

LEXIS 4231, at *8 (N.Y. Sup. Ct., Queens Cnty., Aug. 13, 2012) ("The general rule in New

York is that additional terms … attached as a rider to a printed contract are controlling when

those terms conflict with the printed portion of the contract") (*citing, e.g., Ebbecke v. Bay View

Envtl. Servs., Inc*., 145 A.D.2d 524 (2d Dep't 1988)); *see also Israel v. Chabra*, 12 N.Y.3d 158,

168, n.3 (2009) (the specific prevails over the general, and the more important clauses over the

less important; *Aguirre v. City of New York*, 214 A.D.2d 692, 693 (2d Dep't 1995) (where there

is an inconsistency, "the specific provision controls" over a general provision in an insurance

contract); *N. Edelson Sons Corp. v. Nat'l Union Fire Ins. Co.*, 1994 U.S. Dist. LEXIS 7463, *8

(S.D.N.Y. Jun. 6, 1994) ("the provisions of the [e]ndorsement … plainly override [contradictory]

boilerplate provisions").

Merrick's interpretation of the Policy elevates one word – held "by" – over all the other terms of the Policy, including the term "DOT Regulations" itself.  Merrick would simply ignore that every other merchant listed in Endorsement 4 that were not required to have a merchant reserve had a blank space or "NIL" next to its name.  It also ignores the definition of Loss. Merrick's argument that "DOT Regulations" actually meant no merchant reserve, is facially implausible and contrary to the extrinsic evidence.

All the relevant parties understood that coverage was only excess to the amounts required to be put in the VNB Escrow.  Richmond advised Chartis that its coverage obligation as to Direct Air was excess to what should have been in the VNB Escrow as required by DOT Regulations, and that any shortfall in the VNB Escrow was Merrick's risk:

> Q: Is that, is it your understanding that it [Chartis' coverage obligation] was excess to what was in the account [VNB Escrow], or what should have been in the account?
> A: I understand it's what should have been in the account."

Richmond Tr. 88:24-89:2 [ECF No. 53-1].

> Q: And it was your understanding that, that any shortfall below what the DOT regulations required be in escrow, that was Merrick's risk?
> A: Yes.

Richmond Tr. 104:7-10 [ECF No. 53-1].

In 2007, Richmond discussed the addition of "DOT Regulations" as a reference in a merchant reserve column with Fred Horn, Senior VP of Merrick's Merchant Services Dept., and Richard Fox, Asst. VP, Risk Management, and head of Merrick's Periodic Review Dept., when that reference first appeared in the chargeback policy Merrick then had with General Fidelity Insurance Company ("GFIC").  When later negotiating the Chartis Policy in 2011, Richmond again discussed the reference to DOT Regulations as a merchant reserve with Fox.

3429061_5                                                5

> Q: And with respect to the Chartis Policy, did you have any discussion with anyone at Merrick indicating that the escrow account at the VNB would be treated as a merchant reserve account as that's defined in the Chartis Policy.
> A: Yes.
> Q: With who?
> A: Rich Fox.

Richmond Tr. 101:20-102:2 [ECF No. 53-1].

Merrick's officers understood that the VNB Escrow was a merchant reserve, and two separate officers took no action when Fox raised the issue with them. Fox was concerned that the reference to DOT Regulations would make for a poor merchant reserve account and reported his concern to his superior, Fred Horn. Horn rejected Fox's concerns. Fox Tr. 84:3-19 [ECF No. 53-10]. In subsequent years, Fox again expressed his concern up the chain of command to Horn's successor, David Herzfeld, who also rejected Fox's concerns and took no action to amend the policy. Fox Tr. 99:24 to 100:15, 179:2-15 [ECF No. 53-10]. In short, Chartis, Richmond and Merrick's officers all agreed pre-loss that the VNB Escrow was Direct Air's merchant reserve. Post-loss, Merrick has changed its tune.

The history of the term DOT Regulations also demonstrates that Chartis's interpretation of the policy is the only legitimate one. The merchant agreement between Merrick, Direct Air and JetPay required Direct Air to post a reserve, at Merrick's discretion. "Bank may establish a reserve account at Bank or *any other financial institution designated by Bank* 'Reserve Account,' for all future indebtedness of Merchant to Bank or JETPAY MERCHANT SERVICES…" Def.'s Tr. Ex. 18 at Merrick 1182 (emphasis added). Originally, Merrick decided on a 6 month rolling 10% reserve for Direct Air: the phrase "6 mo./10% rolling res.," was inserted as Direct Air's merchant reserve in the GFIC policy. Merrick's Resp. to Deft's 56.1 Statement ¶ 55 [ECF No. 58]. That merchant reserve was then amended in the GFIC policy to read "DOT Regulation – 100% on deposit with DOT." *Id.*, ¶ 58. *See also* Horn Tr. 51:11-25 [ECF No. 53-3]. Merrick

provided subsequent insurance carriers with a similar reference to DOT regulations for the merchant reserve for Direct Air.  *Id.* ¶¶ 62-64.  The evidence shows that the VNB Escrow was the merchant reserve for Direct Air listed in Merrick's policies.  Merrick's interpretation to the contrary is unsupported.

## II.     COVERAGE IS NOT ILLUSORY UNDER CHARTIS'S INTERPRETATION

Merrick is wrong that coverage under the Policy is illusory simply because this particular claim for Direct Air, in this particular instance, is not covered.  Coverage was available for all 140 merchants, having sales of more than $2 billion.  Moreover, Merrick raised this argument on summary judgment but the Court did not accept it.[2]

"[A]n insurance policy is not illusory if it provides coverage for some acts; it is not illusory simply because of a potentially wide exclusion." *Aspen Specialty Ins. Co. v. 4 NYP Ventures LLC*, 2016 U.S. Dist. LEXIS 23274, at *19 (S.D.N.Y. 2016) (quoting *Assoc. Cmty. Bancorp, Inc. v. St. Paul Mercury Ins. Co.*, 118 A.D.3d 608 (1st Dep't 2014)); *see also United States Fire Ins. Co. v. Nine Thirty FEF Invs., LLC*, 132 A.D.3d 413, 416 (1st Dep't 2015) (bonds at issue were not illusory); *Lend Lease (US) Constr. LMB Inc. v Zurich Am. Ins. Co.*, 136 A.D.3d 52, 60 (1st Dep't 2015) (policy not illusory - it provided some benefit to the insured and the exclusion did not negate all possible coverage).

Here, Merrick ignores its admission that 140 other merchants with over $2 billion in credit card transactions were covered under the Policy, Merrick's Resp. to Deft's 56.1 Statement ¶ 14 [ECF No. 58], and that it admitted that the Direct Air sales were less than 2% of the total sales of all merchants covered under the Policy. *Id.*  Underwriting of the Policy was done on a

---

[2] As addressed in Chartis's motion *in limine* [ECF No. 113], any attempt to introduce such argument or evidence would confuse the jury.  *See Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 278-79 (S.D.N.Y. 2015) (under Fed. R. Evid. 403, evidence that will confuse the jury and unfairly prejudice defendant should not be admitted).

portfolio basis, not by individual merchants.  Stivali Tr. 69:21-70:10 [ECF 53-4]; Camillo Tr.

35:16-22 [ECF 53-6].  Merrick also ignores that same-day sales were not required to be

deposited into the VNB Escrow, and so would be covered if they were uncollectible charge-

backs, but that Chartis was not informed until the summary judgment motion that same-day sales

were not processed by Merrick, and believed there were categories not deposited into the VNB

Escrow.  Deft's SOF ¶¶ 30-33 [ECF No. 51].  Although there may be no coverage for one

merchant (Direct Air) because of a Scheduled Reserve for this particular claim, the Policy cannot

be said to offer no coverage at all.

## III.    GREGORY RICHMOND'S KNOWLEDGE IS IMPUTED TO MERRICK AS A MATTER OF LAW

Merrick is wrong that Richmond did not communicate his interpretation of the Policy to

Merrick because the undisputed evidence shows that Richmond communicated his objective

understanding of the Policy to Merrick personnel.  Moreover, Merrick again attempts to re-

litigate an issue that it lost on summary judgment.  Richmond is Merrick's agent and his

knowledge is imputed to Merrick.  This is law of the case.  *Lugosch v. Congel*, 219 F.R.D. 220,

245 n.20 (N.D.N.Y. 2003) (citing *In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991)).

> This Court held:

> Accordingly, for purposes of securing the Policy, Richmond acted as
> Merrick's agent, and under principles of agency law, Merrick will be bound
> by Richmond's actions. *See, e.g., Kirschner*, 15 N.Y.3d at 465 ("[T]he acts of
> agents, and the knowledge they acquire while acting within the scope of their
> authority[,] are presumptively imputed to their principals."); *Farr v. Newman*,
> 14 N.Y.2d 183, 187 (1964) ("It is well-settled that the principal is bound by
> notice to or knowledge of his agent in all matters within the scope of his
> agency although in fact the information may never actually have  been
> communicated to the principal.").

SJ Order at 10 [ECF No. 64].

An insurance broker is generally considered an agent of the insured. *Bohlinger v. Zanger*, 306 N.Y. 228, 231 (1954) ("[A]n insurance broker, when acting for an insured, is deemed the agent of the insured…"); *Riedman Agency, Inc. v. Meaott Constr. Corp.*, 90 A.D.2d 963, 964 (4th Dep't 1982) ("[G]eneral rule is that an insurance broker is regarded as agent for the insured"). "Under New York law, an insurance broker is an agent when the broker procures insurance on behalf of the insured. The broker's role as an agent generally makes its actions attributable to the insured …. Moreover, even a broker's acts that are not specifically authorized by the insured are binding on the insured, so long as the broker is … procuring insurance for the insured." *Nat'l Specialty Ins. Co. v. 218 Lafayette St. Corp. LLC*, 2008 U.S. Dist. LEXIS 18172, *16 (S.D.N.Y. March 7, 2008) (internal citations omitted); *see also Evvtex Co. v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1327, 1331-32 (2d Cir. 1996) ("[I]nsurance brokers act as agents on behalf of the insured where they are 'employed by the insured to procure insurance.'") (citations omitted).

Here, Richmond testified that he had discussions with a Merrick officer "during the negotiation of the Chartis policy" "indicating that the escrow account at the VNB would be treated as a merchant reserve account as that's defined in the Chartis policy," that "the [VNB] escrow account was a key consideration in the insurance that was issued as it related to Direct Air," and that the meaning of the term "DOT regulations" had not "changed at all from … where it was listed in the GFIC policy or the ACE policies into the Chartis policy." Richmond Tr. 101:20-102:4; 79:19-22; 56:8-12 [ECF No. 53-1]. Richmond also testified that Chartis "was only willing to underwrite the policy for Merrick because it understood that for merchants listed in [Endorsement 4], coverage would be excess to amounts listed in the scheduled deductible column, and the amounts listed in the reserve column." Richmond Tr. 56:13-20 [ECF No. 53-1].

Merrick's argument that it intends to present evidence that "Chartis delegated authority to Richmond to assist Chartis in the review and underwriting of merchants under the Policy," Pl.'s Br. 5 (emphasis deleted), is also misplaced.[3]   Such evidence was submitted on summary judgment and refuted by the undisputed evidence that Richmond was the agent of Merrick, as this Court concluded.  Such evidence did not establish an agency relationship between Richmond and Chartis, and does not change the Court's ruling.  The authorities cited by Merrick on pages 5 and 6 of its Pre-Trial Memorandum of Law are either distinguishable on their facts or not controlling, and do not detract from the Court's summary judgment decision on Richmond's agency.

Dated:  New York, New York          Respectfully submitted,
        October 28, 2016

                                                BRESSLER, AMERY & ROSS, P.C.

                                                By:__/s/ *Robert Novack*_____
                                                     Robert Novack
                                                     Charles W. Stotter
                                                       Nicholas Bamman

                                         17 State Street
                                         New York, NY 10004
                                         (212) 425-9300

                                         *Attorneys for Defendant Chartis Specialty*
                                         *Insurance Company*

---

[3] This argument is contrary to the Court's ruling on Richmond's agency.  It is addressed in Chartis's motion *in limine*.  [ECF No. 113].